Guy **COWEN** and Rolland Comstock, Co-Administrators of the Estate of Charles Earnest Cowen, Deceased, Petitioners,

v.

The Honorable Kenneth **HUGHES**, Judge of the District Court of Creek County, Oklahoma, Respondents.

No. 46215.

Supreme Court of Oklahoma.

Feb. 21, 1973.

Jack B. Sellers, Sapulpa, for petitioners.

Franklin, Harmon & Satterfield, Oklahoma City, for respondent.

Streeter Speakman, Sapulpa, for respondent.

SIMMS, Justice:

Our consideration is on petitioners' application to assume original jurisdiction and for a writ of mandamus. Respondent did not file a written response.

Petitioners seek by mandamus to compel respondent, Honorable Kenneth Hughes, District Judge of Creek County, to order St. Louis-San Francisco Railway Company, a defendant in an action pending before him, to produce statements given by one of its train crews, to permit petitioners to listen to original tape recorded interviews with the same crew members and also third party witnesses, and also, to permit the copying of any or all such statements and the duplication by transcription of any or all of the recorded interviews. On prior request, defendant railway had furnished petitioners, plaintiffs below, transcripts of tape recorded interviews with the third party witnesses which plaintiffs sought to compare with original taped interviews.

The trial court action was one for wrongful death arising out of a train-automobile collision in Enid on April 23, 1970. Plaintiffs, petitioners here, are the co-administrators of the estate of Charles Earnest Cowen who died three days later while hospitalized for injuries received in the accident.

More than two years later, defendant voluntarily submitted its train crew to plaintiffs' attorney for the purpose of taking their depositions. The witnesses admittedly had to use their earlier statements to refresh their memories for the depositions. A few days thereafter, plaintiffs' attorneys made written letter demand of defendant's attorney that it furnish all the written statements and recordings it seeks now by mandamus. The demand was refused. Petitioners then filed their "Motion for Production of Documents and Evidence" pursuant to 12 O.S.1971, § 548. The motion was heard and overruled on October 16, 1972.

All the statements, both written and those tape recorded by interviews, were taken almost immediately after the accident by investigators for the railroad before the district court action was filed. It appears they were later turned over to defendant's attorney.

Petitioners furnished this Court with a complete transcript of the hearing on their motion in the trial court. There was and is no contention that petitioners failed to follow the proper procedure to procure the production of documents and evidence.

During the hearing before this Court on petitioners' application it was conceded that documents and evidence sought by the writ are not the "work product" of defendant attorney and are not privileged.

■ Since Carman v. Fishel, Okl., 418 P.2d 963, it is clear that the extraordinary relief of either prohibition or mandamus is the only remedy available to a party seeking relief from the action of a district court which either orders or prohibits the production of evidence prior to trial. There the trial court ordered the production of documents. The order was held invalid and its enforcement prohibited in the proceeding here. If, as was indicated by petitioners and defendant railroad during oral presentation here, we were able to place a strict construction on Fishel, supra, then the production of written statements and dictabelts sought would not be authorized. Hence, it would require the denial of the writ of mandamus. This would be supported by the language by Justice Lavender at page 972:

"Where party applying for the production, inspection and copying of witnesses' statements obtained by his adversary makes no showing that the witnesses are no longer available, or cannot be located, or are hostile and will not furnish information, or that the information desired cannot be obtained elsewhere upon diligent effort, there is no showing of 'good cause' sufficient to justify an order of production."

Petitioners, however, urge that their situation falls within the exception of the dicta of Fishel, supra, at page 972:

"At least one possible exception to the above may exist such as where statements of witnesses were taken immediately after an accident and movant was prevented

from taking such statements then or for a considerable time thereafter. Some courts have treated such last described statements as having a 'unique value' because they were taken while the witness's memory was vivid and recent, whereas the same person several months later perhaps might have a much less effective recall of the events."

The only issue here is whether the facts constituted "good cause" for the production of the requested documents and evidence. The discovery statute relied upon, 12 O.S. 1971, § 548, begins:

"Upon motion of any party showing good cause * * *"

and then enumerates what may be ordered produced for inspection, copying, or photographing and what the order shall specify.

A situation not only analogous but practically identical to the one here was presented in Southern Railway Company v. Lanham, 403 F.2d 119 (5 Cir. 1968). In Part II of the opinion entitled "STATEMENTS OF THE TRAIN CREW— GOOD CAUSE," Judge Thornberry, speaking for the 5th Circuit and citing numerous authorities and texts on federal practice and procedure, held, (1) the underlying purpose of discovery rules is to provide free access to the facts, (2) p. 126, " 'good cause' requires something more than relevance and something less than the demonstration required to overcome the work product immunity," (3) in answer to the objection that good cause was not shown because crew members were available for depositions (p. 127) "the real question is whether the movant can obtain the *facts* without production of the documents containing the original statements.", (4) because of time lapse between original statements and date of discovery it was doubtful movants could obtain a full and accurate disclosure of the facts, (5) employees of the defendant railroad could be expected to be reluctant to answer fully questions asked by one who had brought an action against

their employer. At pages 127 and 128, the court said:

"In this case, it is doubtful that appellees could presently obtain a full and accurate disclosure of the facts through depositions of the train crew. In the first place, ten months elapsed before the suit was filed, and almost another year intervened before the interrogatories were answered and the motion to produce was entertained by the court. Statements taken at that point are likely to be unreliable due to the lapse of time. For this reason, statements taken from the witnesses shortly after the accident constitute *'unique catalysts in the search for truth,'* Johnson v. Ford, D. Colo.1964, 35 F.R.D. 347, 350, in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory,[7] and many courts have held that the mere lapse of time in itself is enough to justify production of the statements.[8] " (Emphasis added) (citing cases in footnotes)

The court further said at page 130:

"Our role in administering the discovery rules, however, is not to reward diligence or to penalize laziness. A lawsuit is not a contest in concealment, and the discovery process was established so that *'either party may compel the other to disgorge whatever facts he has in his possession.'* Hickman v. Taylor, 1947, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L. Ed. 451." (Emphasis added)

We do not intend to establish any fixed criteria or standard by which courts are to decide if "good cause" has been shown when production of documents and evidence is sought under our discovery rules. The facts of each situation must remain the determinant consideration.

In discussing the definition of "good cause" as related to production of documents and evidence under discovery rules, Chief Justice Callister of the Supreme Court of Utah in Jackson v. Kennecott Cop-

**464**

per Corporation, 27 Utah 2d 310, 495 P.2d 1254 (1972), said at page 1255:

> "There is no settled understanding of what 'good cause' means; since the determination depends to a large extent upon the facts of each case, a wide latitude of discretion is necessarily vested in the trial judge. Although the ability of the movant to obtain the desired information by other means is relevant, the real question is whether the movant can obtain the facts without production of the documents."

It was said further in Jackson v. Kennecott, supra, at page 1256:

> "In the instant action, the trial court did not abuse its discretion by its determination that a showing of good cause had been made, since the documents sought all related to the subject matter of the interrogatories and the central issues of the action and were solely in the possession and/or knowledge of the defendant."

"In Radiant Burners, Inc. v. American Gas Association,[5] the court admonished:

5. (CA 7th, 1963 320 F.2d 314, 98 A.L.R. 2d 228, 239–240.

> 'Certainly, the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure.
>
> .　.　.　.　.　.
>
> 'In balancing the competing goals of the free and unobstructed search for the truth with the right and absolute necessity for confidential disclosure of information by the client to its attorney to gain the legal advice sought thereby, the courts will realize that they are not dealing with a blanket privilege. The limitation surrounding any information sought must be determined for each document separately considered on a case-by-case basis. . . .' "

We find under the circumstances present here that the trial court should have sustained petitioners' motion for pro-

duction of documents and evidence. Therefore, application to assume original jurisdiction is granted, and writ of mandamus granted.