Theodore H. **WILLIAMS**,
Petitioner [Claimant],

v.

**VICKERS, INC., and American Motorists Insurance Company,**
Respondents.

No. 72724.

Supreme Court of Oklahoma.

Oct. 16, 1990.

Wilson N. Jones, Messrs. Frasier & Frasier, Tulsa, for petitioner.

John A. McCaleb, Messrs. Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for respondents.

OPALA, Vice Chief Justice.

The dispositive issue on certiorari is whether the trial tribunal's finding that no work-related injury had occurred is supported by probative evidence. We answer in the affirmative.

The claimant sought compensation for loss of hearing from exposure to high levels of industrial noise during eight years of work as a machinist for the employer. The term of employment began in late 1978 and ended in June of 1986; the claim was filed in January of 1988. Although the injury is claimed to have resulted from the cumulative effect of years of exposure to noise at the workplace, for purposes of this discussion we presume the injury occurred during the final month of employment, June 1986.

At the hearing on his claim he offered a medical report in which his physician found the presence of permanent hearing loss from "occupational noise exposure at the [employer's] ... facility" and gave the claimant a 6 percent impairment rating for the left ear, 4.5 percent for the right ear and 4.75 percent binaurally. This medical evaluation was performed in accordance with the standards required by Rule 37, Workers' Compensation Court Rules,[1]

---

1. The terms of Rule 37, Workers' Compensation Court Rules, 85 O.S.1981, Ch. 4, App., provide in pertinent part:

which was in effect at the time of the claimed injury.

The employer maintained that no on-the-job injury had occurred and tendered proof on that issue which will be assessed later in this opinion. It also offered its own physician's medical report in which the claimant's hearing was evaluated in accordance with the standards prescribed by not only Rule 37, but also by those of Rule 32, which replaced Rule 37 as of June 1, 1987. Rule 32 was hence in effect at the time this claim was filed. As far as the parties are concerned the rules differ in only one respect. Rule 32 requires strict adherence to the criteria set out in the American Medical Association's "Guides to the Evaluation of Permanent Impairment" [Guides] "in all claims filed on or after the effective date of this rule [June 1, 1987]." In that publication's 1984 edition—which the claimant concedes would otherwise be applicable to this claim—the maximum sound frequency to be used in hearing tests is 3000 Hz, while the provisions of Rule 37 itself make 4000 hertz (Hz) the highest test frequency.

Applying Rule 37's criteria, the employer's medical expert found permanent impairment at sound levels *above* 3000 Hz, but under Rule 32's standards (or based on the then current 1984 edition of the Guides) *no* hearing loss was found.[2] We note that although the claimant challenged the Rule 32 standards applied by the employer's physician and the employer objected to Rule 37's use by claimant's doctor, both reports were admitted into evidence. The

trial judge stated she would take their objections under consideration, but on this record, the question of which rule applies stands unresolved.

The trial judge denied the claim based on the *sole finding* that the "claimant did not sustain an accidental personal injury arising out of and in the course of [his] employment." On appeal, a three-judge review panel of the Workers' Compensation Court affirmed the order.

■ In the Court of Appeals the claimant argued 1) the order denying the claim is not supported by any competent evidence and 2) the trial tribunal erroneously applied Rule 32 of the Workers' Compensation Court Rules instead of Rule 37. Rule 32 was in effect when the claim was filed but not when the claimed injury occurred. According to the claimant, "[a]pplication of Rule 32 to Mr. Williams' [the claimant's] case, *merely because his claim was filed after its effective date*, would have the unconstitutional effect of depriving him of a remedy for his injury."[3] (Emphasis added.) Although the employer argued in favor of Rule 32's application, the prime issue tendered for resolution by that party's brief is whether the record contains evidence sufficient to find that the claimant suffered no accidental injury.

The Court of Appeals sustained the claim's denial, holding that Rule 37 is inconsistent with 85 O.S.Supp.1985 § 3(11), which requires use of the *then latest* (1984)

---

"The following criteria for measuring and calculating monaural and binaural hearing impairment has been prepared by the Workers' Compensation Court from information provided by the American Academy of Ophthalmology and Otolaryngology, the 1977 edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" and local physicians. * * *
"* * * *
"4. Estimated hearing level for speech is the simple average of hearing levels at five frequencies, 500, 1000, 2000, 3,000 and 4,000 Hz. Note that *this method includes the hearing level at 3,000 and 4,000 Hz which were not included in the 1977 edition of the 'Guides'.* Therefore, the tables on pages 105 and 106 of the 'Guides' cannot be used."
"* * * *" (Emphasis added.)

**2.** The claimant *concedes* that if Rule 32's evaluation standard were applicable, his hearing loss would not be compensable.

**3.** For support of his argument that application of Rule 32 in this case is constitutionally impermissible, the claimant relies upon the terms of Art. 5 § 54, Okl. Const., which provide:

"The repeal of a statute shall not revive a statute previously repealed by such statute, *nor shall such repeal affect any accrued right,* or penalty incurred, or proceedings begun by virtue of such repealed statute." (Emphasis added.)

The claimant contends that his right to compensation accrued on the last day of exposure to industrial noise at the workplace (June 20, 1986). For our discussion we assume this is so.

edition of the Guides, and that the latter (statute) must control. The appellate court then concluded that the change from Rule 37 to Rule 32, which took place after the injury is alleged to have occurred, had no substantial effect on the claimant's rights. We granted the claimant's quest for certiorari review because the dispositive question to be addressed is not which rule applies, but whether the trial tribunal's denial of this claim for want of an on-the-job injury is supported by the record. We hold that it is.

Nothing in the record supports the assumption that the Workers' Compensation Court *both* chose to apply Rule 32 and found that the claimant *incurred no permanent hearing loss.* The very terms of the order show that the claim was denied solely *for lack of a work-related injury.* Only if a compensable injury is found to have occurred could the claimant be compensated for permanent impairment resulting from his harm. The trial judge's finding that no on-the-job injury had occurred obviated any need for choosing between Rules 37 and 32.

■ Orders denying or awarding compensation must be supported by competent evidence [4]—i.e., that which is probative of the ultimate facts upon which the order rests.[5] As proof that the claimant's hearing was not injured at work the employer introduced, through a company representative, "business records" bearing the results of two hearing tests (audiograms) taken by the claimant in late 1978 shortly after he started working for the employer. When those results are compared with the audiograms taken by both the claimant's and employer's physicians, there appears to be *no considerable difference* in the test patterns. They all indicate practically the same degree of hearing loss in the frequency range *over* 3000 Hz. Although the claimant testified he was "not aware" of the results, he admitted that his hearing was tested sometime near the beginning of employment.[6]

■ It appears that claimant's counsel might have initially objected to the admission of the 1978 audiograms, but when he came to be pressed further, he confined his protest to a *challenge of their probative value.*[7] By doing so the claimant waived any objection to their *admissibility* (or competency).

In support of his probative value challenge the claimant made three assertions before the trial judge: 1) the tests "were not given by a physician or by any health care provider," 2) the testers "did not fol-

**4.** *Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 552 (1984).

**5.** *Whitener v. South Cent. Solid Waste Auth.,* Okl., 773 P.2d 1248, 1250 (1989).

**6.** The employer's brief discusses other evidence upon which the trial tribunal also could have based its denial of this claim. Throughout the period of employment the claimant never reported or sought compensation or medical treatment for his claimed injury; the claim was not filed until a year and a half after the plant had closed. We express no opinion on the viability of this evidence as proof that no accidental injury had occurred.

**7.** By the following colloquy it appears that what might have originally been an objection to admissibility finally culminated in an express challenge to the probative value of the claimant's 1978 hearing test results which were offered into evidence by the employer:

"[Mr. Jones (claimant's counsel):] We do have objections to those reports though and I'm ready to make them on the record.

"[The court:] What's your objection to Respondent's 1 [the claimant's 1978 audiograms]?
"[Mr. Jones:] My first objection to them is that they were not given by a physician or by any health care provider for that matter. My second objection to them is that they did not follow the OSHA protocol for the giving of [sic] hearing test. My third objection to them is that if they did not follow the OSHA protocol then they tend to overstate the amount of this man's hearing loss because they reflect what is called a temporary threshold shift. A temporary threshold shift is a temporary loss of hearing not compensable in this court.
"[The court:] Mr. Jones, you're making [sic] competency objection?
"[Mr. Jones:] No, Judge, I'm telling you they don't have any probative value.
"[The court:] Making a probative value objection?
"[Mr. Jones:] Yes, ma'am.
"[The court:] ... I'm going to go ahead and admit them. I'll take your objection under consideration."

low the OSHA protocol" and 3) "if they did not follow the OSHA protocol then they tend to overstate the amount of this man's hearing loss because they reflect what is called a temporary threshold shift." Since the claimant failed to explain what is meant by "OSHA protocol" and to reassert any of these arguments on review, we do not reach the issue of their effect, if any, upon the employer's evidence.

Claimant's counsel had examined the employer's witness by inquiring during the proceedings into his knowledge of procedures to test hearing as well as his competence as custodian of the documents. This voir dire examination revealed nothing that operates to destroy their probative effect.[8] Much like a medical opinion that appears competent on its face and is received into evidence, the initial audiograms have probative value unless, *through cross-examination,* a fatal flaw is revealed.[9] The following analysis illustrates this principle.

Claimant's counsel attacked the probative effect of the employer's evidence by arguing that no physician had administered the 1978 audiograms. *Assuming* the absence of a health care professional as an operator of the hearing test is fatal to its probative value, the claimant's cross-examination of the employer's witness in the instant claim failed to impair the effect of the documents as proof of the facts they establish on their face. A medical doctor's signature appears above the line for "attending physician." On cross-examination the record's keeper was asked whether a doctor had "run" the tests. He answered that he does not know and was not present when the claimant's hearing was tested. It cannot hence be said that this testimony

utterly destroyed the audiograms' probative value.

We therefore hold that the employer's evidence has probative value that supports the order denying the claim based on the finding that no compensable injury has occurred.

THE COURT OF APPEALS' OPINION IS VACATED; THE WORKERS' COMPENSATION COURT'S ORDER DENYING THE CLAIM IS SUSTAINED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN, ALMA WILSON and SUMMERS, JJ., concur.

SIMMS, J., concurs in judgment.

KAUGER, J., concurs in result.

---

**8.** On voir dire examination the employer's company representative was asked: 1) whether he was present when the claimant took the tests, 2) what was the "protocol to taking these tests," 3) who administered them, 4) are the tests given by a doctor and 5) how long had the claimant been off the job line by the time he took the tests? To these questions the witness either did not know the answers or gave a negative response. When asked to define a "temporary threshold shift," the witness appears to have done so to the claimant's satisfaction by stating it is a form of temporary loss of hearing caused by exposure to loud noises.

**9.** Cf. *Bostick Tank Truck Service v. Nix,* Okl., 764 P.2d 1344, 1347–1348 (1988) (when the probative value of a medical opinion is challenged for assumption of an incomplete or inaccurate history, "the duty rests upon the cross-examiner to elicit from the witness the failure to assume a fact conceded to be material or to show that the omitted fact is indeed indispensable so that its omission from the range of facts to be assumed is fatal to the probative value of the expert's opinion").